# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHIRLEY J. CLINTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-219-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## AMENDED REPORT AND RECOMMENDATION

The claimant Shirley J. Clinton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 23, 1953, and was fifty-eight years old at the time of the administrative hearing (Tr. 28, 113). She has an eighth grade education, completed training for certified home health aide, and has worked as a certified nurse's aide (Tr. 41, 149). The claimant alleges that she has been unable to work since May 15, 2008, due to bulging discs in her back, chronic obstructive pulmonary disease (COPD), emphysema, osteoarthritis, depression, rheumatoid arthritis, and peptic ulcers (Tr. 148).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-05, on October 9, 2010. Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated December 19, 2011 (Tr. 18-24). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant had no symptom or combination of symptoms which constituted a medically determinable impairment through her date last insured of December 31, 2009 (Tr. 20-22). Thus, the ALJ determined that the claimant was not disabled (Tr. 23).

## Review

The claimant contends that the ALJ erred in the following ways: (i) failing to fully and fairly develop the record, and (ii) improperly determining that she does not have any medically determinable impairments. The undersigned Magistrate judge is not persuaded by the claimant's arguments.

Radiology reports from 2006 reveal that the claimant had a disc bulge at C5-C6 that compressed the spinal cord, as well as a small collection of fluid that resulted in a mild degree of spinal canal stenosis and did not abut the spine cord (Tr. 321, 330-333). In March and April of 2008, the claimant presented to Dr. Don Schumpert, Jr., D.O., with complaints of shortness of breath and fatigue and a flat affect (Tr. 217-223). Dr. Schumpert recommended a sleep study, which was never performed, and assessed her with malaise, rheumatoid arthritis, COPD, hyperlipidemia, and a vitamin D deficiency (Tr. 217).

From August 2009 through September 2010, the claimant presented to Affordable After Hours Healthcare Clinic for weight management (Tr. 225-257). She was prescribed a medication and advised as to diet and exercise. On January 18, 2010, she complained of joint pain that had lasted several days, and again complained of knee pain on April 14, 2010 (Tr. 239, 251).

In September 2010 she presented to Family Medical Clinic in Poteau, Oklahoma, to establish care. She was assessed with decompensated COPD, insomnia, obstructive sleep apnea, tobacco dependence, and degenerative spinal arthritis (Tr. 268). As to the

degenerative spinal arthritis, she was prescribed Lortab and advised to alternate cold and hot packs, and engage in strengthening exercises (Tr. 269).

On November 30, 2010, a state reviewing physician found that there was insufficient evidence to determine the extent of the claimant's mental impairments (Tr. 288, 300). That same month she presented to Family Medical Clinic with complaints related to degenerative spinal arthritis, complaining that her current episode of pain had lasted two weeks, and also that her COPD had gotten worse and she was experiencing chest pain (Tr. 309). In December 2010, the claimant underwent a Holter monitor study; there was no evidence of underlying ischemia, trivial aortic insufficiency, trivial mitral regurgitation and tricuspid regurgitation; and no further testing was recommended. The cardiologist recommended further testing in light of the patient's multiple risk factors only if her symptoms continued to be an issue (Tr. 303).

On March 11, 2011, Dr. Steve Ashford completed a physical RFC evaluation, indicating that the claimant could sit forty-five minutes, stand twenty minutes, and walk five minutes in an eight-hour workday, and that she also had lift/carry and a number of postural limitations (Tr. 318).

The claimant first argues that the ALJ failed to perform a proper step two analysis, namely that he failed to develop the record by ordering consultative physical and psychological examinations. A claimant has the burden of proof at step two of the sequential analysis to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987). This determination

"is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

In this regard, the ALJ found that the claimant did not have a medically determinable impairment (or combination thereof), and therefore she was not significantly limited in her ability to perform basic work-related activities. The ALJ properly noted that the claimant's flat affect at her first two visits to Dr. Schumpert in March 2008, but pointed out that her affect was normal at her visit on April 28. He further noted the diagnoses including malaise, but stated that there was no objective evidence to support the diagnosis (Tr. 21-22). The claimant's argues that the state reviewing physician's assertions that there was insufficient evidence as to her mental impairment required the ALJ to order a consultative examination. But the ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health &*

*Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id*. at 1166 [citations omitted]. In this case, the claimant did allege depression as a mental impairment, but the ALJ correctly noted the medical evidence demonstrated no finding of depression during the insured period. Claimant asserts that there was evidence of depression near her onset date and near the date last insured, but only the former is borne out by the evidence. The other evidence cited by the claimant is from October 2, 2010, where the claimant was positive for fatigue (Tr. 266-267) and November 30, 2010, where Dr. Ashford diagnosed the claimant with major depression, single episode, that had been present for five months (Tr. 309). Further, claimant's counsel did not raise her depression as an issue for further development, nor did counsel request that the ALJ order a consultative examination regarding the claimant's mental impairments. *Hawkins*, 113 F.3d at 1168 (noting that without a request by counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record).

Last, the claimant asserts that the evidence demonstrates a medically determinable impairment prior to the date last insured. In his review of the record, the ALJ noted that

the claimant was diagnosed with COPD after her date last insured, that she was diagnosed with osteoarthritis but that there was no evidence of limitation during the insured period, and that she had neck surgery in 2011. He concluded, stating, "the claimant has developed some severe impairments with mild limitations; however the earliest is one and a half years after her date last insured, and these findings do not support a severe impairments prior to December 31, 2009" (Tr. 23). The ALJ acknowledged Dr. Ashford's Physical RFC Assessment from March 2011 (which did not indicate a retrospective assessment), but noted that his treatment notes from September 2010 and January 2011 did not support a severe impairment prior to December 31, 2009, and that he therefore assigned little weight to the opinion (Tr. 23). He then referred to the state reviewing physicians who also found no evidence of a severe impairment prior to the date last insured, concluding that the claimant was not disabled (Tr. 23). The claimant argues that the following evidence established a medically determinable impairment: (i) the 2006 MRI of the bulging disc; (ii) Dr. Schumpert's March 2008 diagnosis of malaise, COPD, rheumatoid arthritis, hyperlipidemia, and Vitamin D deficiency; and (iii) Dr. Ashford's 2011 RFC assessment. She contends that the limitations imposed by Dr. Ashford in 2011 logically apply prior to her date last insured, and that the evidence surrounding the insured period establishes medically determinable impairments. As the Commissioner points out, "subsequent evidence or retrospective diagnosis without evidence of actual disability during the relevant period is not sufficient to show disability at that time." *Slocum v. Secretary of Health and Human Services*, 9

F.3d 117, 1993 WL 425398, at *3 (10th Cir. Oct. 19, 1993) [unpublished table opinion], *citing Flint v. Sullivan*, 951 F.2d 24, 267 (10th Cir. 1991). While a "retrospective diagnosis and subjective testimony can be used to diagnose a physical or mental condition, this type of evidence alone cannot justify an award of benefits." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). Here, there is not even a retrospective diagnosis; the claimant simply argues that because records indicate a severe impairment two years after her date last insured, she therefore must have been impaired during the insured period. "Evidence relating to a time outside the insured period is only minimally probative, but may be considered to the extent it illuminates a claimant's health before the expiration of his insured status." *Nagle v. Commissioner of Social Security*, 191 F.3d 452, 1999 WL 777355, at *1 (6th Cir. Sept. 21, 1999) [unpublished table opinion]. Here, the evidence outside the insured period does not serve as evidence of a severe impairment, much less a disability, prior to the expiration of her insured status. *See Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1348-1349 (10th Cir. 1990) ("[T]he relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status. A retrospective diagnosis without evidence of actual disability is insufficient. This is especially true where the disease is progressive") [emphasis in original].

Because substantial evidence supports the ALJ's decision as outlined above, the undersigned Magistrate Judge RECOMMENDS that the decision of the Commissioner be AFFIRMED.

**Conclusion**

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the undersigned Magistrate Judge RECOMMENDS that the decision of the Commissioner be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**